*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

MICHAEL TODD GRAY, JR.,

    Defendant-Appellant.

UNPUBLISHED
March 19, 2025
11:45 AM

No. 368654
Kent Circuit Court
LC No. 22-009515-FH

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant, Michael Gray, Jr., appeals by right his jury-trial convictions of indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c), and aggravated indecent exposure, MCL 750.335a(2)(b). For the reasons stated in this opinion, we vacate his conviction of indecent exposure by a sexually delinquent person, but otherwise affirm.

## I. BASIC FACTS

This case arises because, on multiple occasions, Gray arrived at Trinity Health Saint Mary's Hospital in Grand Rapids complaining of testicular pain caused by an injury. On each occasion, he provided different false names and dates of birth. Three female ultrasound technicians testified to three separate incidents that occurred in August 2022, but there was surveillance footage showing his presence at the hospital on additional days.

The first technician explained that while she was conducting an ultrasound of Gray's testicles, Gray asked if she would mind if he "relieved" himself. His hand was on his penis under a towel and he was stroking it repeatedly. At some point, he removed the towel, exposing his erect penis while he continued stroking it. The technician finished the examination and acted as if everything was "okay" even though it was not. The second technician testified that Gray behaved similarly when she conducted an ultrasound of his testicles. During the procedure she noticed a "rhythmic movement" under the towel caused by Gray repeatedly touching his erect penis. She asked him to stop, but he did not do so. At the end of the examination, he removed the towel and exposed himself to her. The third technician also testified that Gray touched his erect penis during an ultrasound procedure. She stated that Gray stated that it felt "good" and asked her if it would

-1-

"mess up" the examination if he "released" himself. She did not answer the first time, but when he asked a second time, she told him that she was almost done. Gray did not expose his penis to her.

Gray admitted that he had done everything that the technicians said he had done, but he denied making the comments that the third technician said he had made. He stated that he did not know that what he had done was illegal and that he "didn't know" that the technicians were feeling uncomfortable while he was masturbating in front of them. He explained that he used different names on each occasion because he was trying to get "pain killers" without paying for them because he did not want to have medical debt. He added that he would sometimes leave without waiting to see the emergency room physician because he had gotten what he wanted already.

## II. SEXUAL-DELINQUENCY HEARING

### A. STANDARD OF REVIEW

Gray first argues that the trial court erred by not holding a separate hearing to determine if he was "sexually delinquent" under MCL 767.61a. Because he did not object to the lack of a separate hearing in the trial court, we review this unpreserved issue for plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

### B. ANALYSIS

Under MCL 767.61a, the prosecution may charge a defendant with being a sexually delinquent person in relation to an underlying sexual offense. The statute expressly provides that when a defendant pleads guilty to both the underlying sexual offense and the charge of being a sexually delinquent person, the trial court must "conduct an examination of witnesses relative to the sexual delinquency of such person and may call on psychiatric and expert testimony." MCL 767.61a. Additionally, the court must also hold such a hearing when the defendant pleads no contest to both charges. *People v Franklin*, 298 Mich App 539, 544-545; 828 NW2d 61 (2012). However, the question as to whether a defendant was guilty of both the underlying sexual offense and the charge of sexual delinquency could be determined by a single jury. *Id*. at 544.

In this case, the trial court did not hold a separate hearing relative to the charge that he is a sexually delinquent person. However, the record reflects that the jury was instructed to determine both his guilt as to the underlying sexual offense and to the charge that he was a sexually delinquent person. Because Gray did not plead guilty or no contest and because the question as to whether he was a sexually delinquent person was determined by the jury, the trial court did not err by not holding a separate hearing on the matter.

## III. DOUBLE JEOPARDY

### A. STANDARD OF REVIEW

Gray next argues that his conviction of indecent exposure by a sexually delinquent person and aggravated indecent exposure violated double jeopardy. Gray did not raise this issue in the trial court, so our review is for plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## B. ANALYSIS

Both the United States and Michigan Constitutions bar subjecting a person to double jeopardy. US Const, Am V; Const 1963, art 1, § 15. "The double jeopardy bar prevents (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Franklin*, 298 Mich App at 546. Gray was convicted of aggravated indecent exposure and indecent exposure. This Court has already explicitly held that "[a]ggravated indecent exposure and indecent exposure are the 'same offense' for purposes of double jeopardy." *Id*. at 547. Accordingly, Gray's convictions of aggravated indecent exposure and indecent exposure by a sexually delinquent person violate double jeopardy.

On appeal, the prosecution concedes that a double-jeopardy violation occurred and that Gray's conviction for indecent exposure should be vacated. However, it asserts that the sentencing enhancement applied to the indecent exposure conviction for being a sexually delinquent person should be applied to Gray's conviction for aggravated indecent exposure. The prosecution suggests that this course of action is appropriate because Gray was only charged with one count of aggravated indecent exposure by a sexually delinquent person and that a misunderstanding at trial had led to Gray receiving two convictions. Yet, the felony complaint clearly lists two offenses: indecent exposure by a sexually delinquent person and aggravated indecent exposure. Further, the jury was presented with two counts: indecent exposure by a sexually delinquent person and aggravated indecent exposure. Thus, the record clearly shows that the sexual-delinquency sentencing enhancement was tied to the charge of indecent exposure, not the charge of aggravated indecent exposure. Because the charge to which the indecent exposure conviction was attached must be vacated in order to remedy the double-jeopardy violation, there is no conviction to which the sexual-delinquency sentencing enhancement may now be applied. See *id*. at 545 (holding that if a sentencing enhancement is tied to a conviction that is vacated, then the sentencing enhancement must also be vacated). Consequently, we vacate Gray's conviction for indecent exposure by a sexually delinquent person and affirm his conviction of aggravated indecent exposure.

## IV. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

In a brief filed under Standard 4 of Supreme Court Administrative Order No. 2004-6, Gray argues that his lawyer provided ineffective assistance. "When no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

To establish ineffective assistance, a defendant must show: (1) that his lawyer's performance fell below an objective standard of reasonableness under prevailing professional

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

norms; (2) that there is a reasonable probability that, but for his lawyer's error, the result of the proceedings would have been different. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). The defendant bears the burden of establishing the factual predicate for his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Gray provides a list of his lawyer's actions and inactions which he contends show that his lawyer provided constitutionally deficient assistance. He asserts that his lawyer (1) showed no interest in fighting the charges, (2) advised him that the preliminary examination should be waived, (3) told him that the indecent exposure charges would not be brought to trial, (4) did not file a motion for a bill of particulars, (5) conducted "no investigation," (6) did not question the witnesses regarding "HIPPA" and the hospital procedures for ultrasound diagnosis (7) failed to object to the testimony indicating that an "injury" was depicted on the ultrasound images, (8) did not ask the "nurses if they were offended by what they saw," (9) did not argue to the jury that none of the "nurses" testified that they were "offended" by his conduct, and (10) did not argue that MCL 750.335 was unconstitutionally vague as applied to him because it did not provide him notice that masturbating and getting an erection in front of "nurses" who commonly saw erect penises would cause them to be offended by his actions.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Here, the majority of Gray's allegations are nothing more than cursory announcements of his position with little or no citation of supporting authority or factual support. He has, therefore, abandoned many of his alleged instances of ineffective-assistance by failing to support his arguments. We consider only the allegations for which Gray provided legal and factual support.

First, Gray argues that his lawyer provided ineffective assistance by failing to ask the technicians if they were "offended" by his behavior. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted). The defendant bears the burden of overcoming the presumption that the challenged action is part of the lawyer's trial strategy. *Hoag*, 460 Mich at 6. Here, Gray notes that an element of indecent exposure is that there is a substantial risk that a person would be "offended" by what they saw. In support, he directs this Court to *People v Vronko*, 228 Mich App 649, 656; 579 NW2d 138 (1998), which noted that the definition of "open exposure" under MCL 750.335a is "any conduct consisting of a display of any part of the human anatomy under circumstances which create a substantial risk that someone might be offended." However, in *Vronko*, this Court further explained that open or indecent exposure takes place when "the exposure occurred in a public place under circumstances in which another person might reasonably have been expected to observe it." *Id*. The Court clarified that "there is no requirement that the defendant's exposure actually be witnessed by another person . . . ." *Id*. Accordingly, whether or not the technicians were actually offended by Gray's conduct is not an element of the offense. Gray's lawyer, therefore, did not provide constitutionally deficient assistance by not asking questions related to whether or not they were offended when whether or

not they were offended is not an element of the offense. Rather, declining to ask such questions, is plainly a matter of trial strategy given that, if they had answered that they were, in fact, offended, the prosecution's case against Gray would have been strengthened. For the same reasons, Gray's lawyer did not provide constitutionally deficient assistance by not arguing to the jury that the technicians had not testified that they were offended.

Second, Gray argues that his lawyer was ineffective for failing to argue that MCL 750.335a was unconstitutionally vague. "A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overly broad and impinges on First Amendment Freedoms." *Vronko*, 228 Mich App at 652. "When a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others." *Id*. "The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case." *Id*. "A statute is not vague if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id*. at 653.

Here, Gray's behavior consisted of using false names and dates of birth in order to obtain repeated ultrasounds of his testicles. The examination process required that the technicians apply a gel to his testicles and then take images by rubbing a transducer "wand" against each testicle. During each examination, he masturbated while the female technicians used the "wand" on his testicles. He did so despite being told to stop. Further, while he was masturbating, he made comments asking if it would be "okay" for him to "relieve" or "release" himself and indicating that "it felt good." He exposed his erect penis to two of the technicians. The language of the indecent exposure statute provided him fair notice that the act of masturbating during a medical examination and exposing his erect penis to the technicians performing the ultrasound was conduct proscribed by the statute. Moreover, it did not confer on the finder of fact "unstructured and unlimited discretion to determine whether an offense has been committed in the context of the charged conduct." *Id*. at 654.

Further, although Gray suggests that the technicians were frequently exposed to erect penises, their testimony contradicts his assertion. They testified that, in the ultrasound setting, erect penises were sometimes apparent. However, they had never before been exposed to a patient masturbating during the examination, nor one who would expose his erect penis while masturbating. Given that the statute is not unconstitutionally vague, Gray's lawyer did not provide ineffective assistance by raising such a challenge to the statute. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that a failure to advance a meritless argument does not constitute ineffective assistance).

In sum, Gray has abandoned the majority of his ineffective-assistance claims by failing to provide legal and factual support of his positions. The claims that were somewhat supported are, as explained above, without merit.

## V. JUDICIAL IMPARTIALITY

### A. STANDARD OF REVIEW

Lastly, Gray argues in his Standard 4 brief that he was deprived of a fair trial because the judge displayed partiality. We review this unpreserved challenge for plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

### B. ANALYSIS

During his direct examination, Gray was asked why he had left the hospital before a physician consulted with him regarding his test results. As part of his answer, Gray volunteered that he had "never been charged with a sex crime prior to this." Immediately after his testimony, the trial court asked Gray's lawyer and the prosecution to approach the bench for an off-the-record conference. After the conference, the judge advised Gray that he needed to answer the questions asked to him. Later, during cross-examination, the court concluded that Gray's unsolicited testimony regarding other "sex crime" charges had opened the door to allow the prosecution to impeach him with evidence that he had, in fact, been charged with additional sex-based crimes. Gray explained to the prosecution that the additional charges occurred after the conduct at issue in this case.

Now, on appeal, Gray contends that, during the bench conference, the trial judge told the prosecutor that Gray had "opened the door" and that the prosecutor should question him regarding his other cases. He assumes that the jury also heard what the judge told the prosecutor. However, there is nothing on the record to support a finding that the jury heard—or was even in a position— to hear the judge's comments. In the absence of evidence that the jury heard the judge's allegedly improper comments to the prosecutor, there can be no showing that the judge's alleged lack of impartiality prejudiced Gray's defense. See *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015) (holding that a trial judge's conduct deprives a defendant of a fair trial if, under the totality of the circumstances, the judge's conduct "improperly influenced the jury by creating the appearance of advocacy or partiality against a party.").

We remand this matter to the trial court to vacate Gray's conviction of indecent exposure by a sexually delinquent person. We affirm in all other respects. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick